415 So.2d 327 (1982)
Leroy H. SCOTT, Plaintiff-Appellant,
v.
COMMERCIAL UNION INSURANCE COMPANY, Defendant-Appellee.
No. 14882.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1982.
*328 Harold D. Vaught, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by John D. Collinsworth, Shreveport, for defendant-appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Finding that an employee was not acting within the scope of his employment when he committed a battery upon plaintiff, the trial judge sustained a motion for a directed verdict filed on behalf of the employer's liability insurer and rejected plaintiff's demands for damages. Plaintiff appealed. Concluding that the trial judge's factual determination was not clearly wrong, we affirm.
Plaintiff's testimony was the only evidence presented at the trial dealing with the factual context of this litigation. It revealed that on March 12, 1974 plaintiff, a Shreveport attorney, visited the business premises of Columbia Equipment Company, Inc., in Bossier City, to check on repairs to his tractor; to confer with George Despot, a company official, about legal matters; and to discuss with Mercer, an employee, his wife's arrearages on a mortgage note held by plaintiff.
Upon learning from Despot that Mercer was the mechanic who had worked on his tractor, plaintiff went back into the shop area to contact that employee, who was pointed out to plaintiff by another worker. Plaintiff testified that he and Mercer began their conversation by discussing the nature of the repairs to the tractor. Deciding to inspect that piece of equipment, the two left the shop and started walking to the lot where the tractor was parked. At that point, plaintiff broached the subject of the delinquent note payments and inquired of Mercer what he and his wife planned to do about the arrearage. Mercer replied that they intended to vacate the mortgaged premises, adding that he knew plaintiff (who was legal counsel for the employer) could get him fired. Plaintiff denied any such intent. Thereupon, according to plaintiff, "out of a clear blue sky" Mercer struck him in the mouth with a can (described as about eight inches high and just smaller in diameter than a standard-sized oil can), causing the injuries for which plaintiff seeks damages.
Although Mercer was originally named as a defendant, he and plaintiff entered into a compromise agreement which resulted in a dismissal of the suit as to that defendant. Trial on the merits as to the remaining defendant, the employer's liability insurer, was had on October 14, 1981.
*329 An employer is liable for a tort committed by his employee if, at the time, the employee was acting within the scope of his employment. La.C.C. Art. 2320; Miller v. Keating, 349 So.2d 265 (La.1977); LeBrane v. Lewis, 292 So.2d 216 (La.1974).
An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objectives. Bradley v. Humble Oil & Refining Co., 163 So.2d 180 (La. App. 4th Cir. 1964).
The particular facts of each case must be examined to determine whether the employee's tortious conduct was within the scope of his employment. Miller v. Keating, supra; Walters v. Sentry Insurance Co., 354 So.2d 1087 (La.App. 2d Cir. 1978).
In the LeBrane case, supra, a supervisory employee stabbed another employee whom the assailant had just fired and was attempting to evict from the employment premises. Finding the employer vicariously liable, the court reasoned:
"The dispute which erupted into violence was primarily employment-rooted. The fight was reasonably incidental to the performance of the supervisor's duties in connection with firing the recalcitrant employee and causing him to leave the place of employment. It occurred on the employment premises and during the hours of employment.
"In short, the tortious conduct of the supervisor was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests. It can thus be regarded as within the scope of the supervisor's employment, so that his employer is liable in tort to third persons injured thereby."
Also see and compare Weysham v. New Orleans Public Service, Inc., 385 So.2d 19 (La.App. 4th Cir. 1980); Posey v. Fabre, 369 So.2d 237 (La.App. 4th Cir. 1979).
In this case, plaintiff stated that, just prior to being struck by Mercer, the two were discussing the delinquent status of the note secured by the mortgage on the property of Mercer's wife. Plaintiff candidly admitted in his testimony that this had nothing to do with Mercer's employment. Consequently, we do not find the trial judge committed manifest error in determining that "at the time the blow was struck ... they were discussing personal business" as opposed to an employment-related subject.
Since Mercer's striking plaintiff was "motivated by purely personal considerations entirely extraneous to the employer's interests", his tortious act was not committed within the scope of his employment; his employer is not vicariously liable for that conduct; and the trial judge correctly sustained the defendant insurer's motion for a directed verdict.
Plaintiff's argument on appeal that Despot's consent to plaintiff's discussion of a personal matter on employment premises with Mercer rendered the employer vicariously liable for Mercer's tort is without merit. The granting of this permission was apparently for the convenience of plaintiff and not for the furtherance of the employer's interests. There was no reason for the employer to anticipate that the conversation would provoke a violent reaction by the employee. Therefore, the battery committed by Mercer upon the plaintiff could not reasonably be regarded as "a risk of harm fairly attributable to the employer's business."
For these reasons, the judgment of the district court is affirmed, at appellant's cost.