JjGKEMILLION, Judge.
In this case, the defendants-appellants, Della Faye Jackson and Canal Insurance Company, appeal the judgment in favor of the plaintiff-appellee, Bruce Swartz. For the following reasons, we reverse and render.
FACTS AND PROCEDURAL HISTORY
On Memorial Day in May 1996, Swartz, the operations manager of a convenience store in Breaux Bridge, Louisiana, was injured when he was struck by Ricky McNabb, who was driving a delivery truck owned by Jackson. The altercation arose when Swartz requested that McNabb move the delivery truck he was driving because it was blocking the view and access to the store’s gas pumps on one of the busiest weekends of the year. The convenience store was located in an area where numerous gas stations are located close together, thus greatly increasing the competition for a customer’s business.
After a trial, the jury returned a verdict finding that McNabb assaulted and/or battered Swartz and that said conduct was the legal cause of his injuries; that Jackson granted McNabb permission to use the vehicle; that he acted within the scope of the permission granted by her; that his conduct arose out of the operation, use, or maintenance of the vehicle; that McNabb was an employee of Jackson Trucking at the time of the incident; that he was in the course and scope of his employment during the incident; that negligent hiring, retention, or supervision practices of Jackson were not the cause of injury to Swartz; that McNabb did not expect or intend the bodily injury suffered by Swartz; and, that no act of Swartz caused or contributed to the incident which led to his injuries.
!¡>The jury attributed fault as follows: 70% to McNabb; 0% to Swartz; and, 30% to Jackson. It made the following awards of damages: $50,000 for past medical expenses; $20,000 for future medical expenses; $40,000 for physical injury, disfigurement, or disability; $75,000 for physical pain and suffering, past and future; $75,000 for mental anguish, distress, and psychological/emotional damage, past and future; $0 for loss of enjoyment of life; $100,000 for past lost wages; and, $0 for future lost wages, for a total award of $360,000. The trial court’s judgment cast McNabb and Jackson hable jointly and in solido to Swartz. Jackson and Canal now appeal.
ISSUES
Canal assigns as error:
1. The trial court’s failure to instruct the jury as to the application of Florida law.
2. The trial court’s failure to ahow it to introduce evidence regarding the *1096 scope of the permission granted to McNabb in the use of the vehicle at issue.
Canal and Jackson assign as error:
1. The jury’s finding that McNabb was Jackson’s employee and was in the course and scope of his employment at the time of the incident.
2. The jury’s finding that McNabb did not expect or intend to harm Swartz.
3. The jury’s allocation of 30% of the fault to Jackson while finding that she was not negligent.
4. The jury’s award of excessive damages.
JURY INSTRUCTIONS
The insurance policy at issue was purchased by Jackson from Canal in Rthe State of Florida where Jackson’s business is located. In its first assignment of error, Canal urges that, although the trial court stated it was fashioning the jury instructions and verdict form under Florida law, the trial court failed to instruct the jury on Florida law as it pertained to the coverage issues, particularly the requested jury charges it proposed. It argues that, had the jury been properly instructed regarding Florida law, it was manifestly erroneous for the jury to find insurance coverage for the incident. We agree. In Crooks v. National Union Fire Insurance Co., 620 So.2d 421, 424 (La.App. 3 Cir.), writs denied, 629 So.2d 391, 392 (1993), (citations omitted), we stated:
It is well settled that the trial judge has a duty to give instructions to the jury which properly reflect the applicable law in light of the pleadings and facts in each particular case. Proper jury instructions are those which fairly and reasonably point up the issues presented by the pleadings and evidence and provide correct principles of law for the jury to apply to those issues. It is also the judge’s responsibility to reduce the possibility of confusing the jury.
Further, a special verdict requiring a jury to return a special written finding on each issue of fact requires adequate jury interrogatories which fairly and reasonably point out the issues and which guide the jury in reaching a verdict. If the trial court submits a verdict form to the jury with misleading or confusing interrogatories, just as when it omits to instruct the jury on an applicable essential legal principle, such interrogatories do not adequately set forth the issues to be decided by the jury and may constitute reversible error. If error misled the jury, then this court must set aside the verdict and, if the record permits — if it is complete — then this court must make its own findings of fact, and render a verdict. If, however, there is no error, or if the error did not induce the jury to reach an erroneous verdict, then the jury’s findings and verdict are entitled to deference, and the standard of review is whether those findings were manifestly erroneous- — not supported by the record.
The Canal policy reads as follows:
I. Coverage
l/The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use ... of an owned automobile ....
III. Persons insured: Each of the following is an insured under this insurance the extent set forth below:
(a) the named insured
*1097 (c) any other person while using an owned automobile ... with the permission of the named insured, provided his actual operation ... or use thereof is within the scope of such permission....
VI. Definitions
“Occurrence” means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
In the jury verdict form, the jury was presented with four questions pertaining to whether or not McNabb was covered under the omnibus provision of the Canal policy. It answered affirmatively that Jackson granted permission to McNabb to use the truck on the date of the incident, that he acted within the scope of the permission granted by her, and that his conduct arose out of the operation, use, or maintenance of the truck. It further found that McNabb did not expect or intend the bodily injury suffered by Swartz, a finding that, in the affirmative, would have |Rexcluded coverage under Florida law. However, it specifically found that McNabb committed assault and/or battery on Swartz.
The trial court did not instruct the jury as to the applicable legal principles under Florida law regarding whether or not the Canal insurance policy would provide coverage for this incident. The trial court was free to leave factual determinations to the jury and may have excluded such instructions to reduce confusing the jury, reasons which are acceptable in our view. However, it then failed to apply the applicable legal principles under Florida law.
Because the insurance policy was purchased in Florida by a Florida resident doing business in Florida, Florida law applies to the question of whether the Canal policy affords insurance coverage in this case. Under Florida law, an actor’s intentional tort toward the victim excludes coverage under insurance policies where an “accident” must be neither intended nor expected. These principles are summarized in Hartford Fire Insurance Co. v. Spreen, 343 So.2d 649, 650-52 (Fla. 3d DCA 1977) (emphasis added):
As to this policy, the issue presented for review is whether bodily injury inflicted by the insured in an assault and battery is covered by a homeowner’s liability policy which insures against damages caused by an ‘accident’ and which specifically excludes damages which are ‘either expected or intended from the standpoint of the insured. ’ We conclude that the assault and battery incident herein is not covered by the Hartford policy and reverse.
The Florida courts in a line of cases have consistently held that insurance policies covering liability for an ‘accident’ apply to any bodily injury or property damage inflicted by the insured on a third party where the insured does not intend to cause any harm to the third party; this result obtains even though damages are caused by the insured’s intentional acts and were reasonably foreseeable by the insured. Insurance coverage has accordingly been found under such policies |fiwhere an insured unintentionally shoots himself while playing ‘Russian Roulette’, Gulf Life Insurance Co. v. Nash, 97 So.2d 4 (Fla.1957); or unintentionally shoots himself while attempting to disarm a person in a fight in which the insured is the aggressor, Harvey v. St. Paul Western Insurance Cos., 166 So.2d 822 (Fla.3d D.C.A.1964); or unintentionally shoots a bystander during a family quarrel, Grange Mutual Casualty Co. v. Thomas, 301 So.2d 158 (Fla.2d D.C.A. *1098 1974); or unintentionally hits a person in a crowd of people with a ear while slowly driving into the edge of the crowd intending to disperse them, Phoenix Ins. Co. v. Helton, 298 So.2d 177 (Fla. 1st D.C.A.1974), or unintentionally injures a person in a car while intentionally pushing the car which was blocking a driveway, Cloud v. Shelby Mutual Insurance Co., 248 So.2d 217 (Fla.3d D.C.A.1971). Running through all of these cases is an act of negligence by the insured, sometimes gross or even culpable negligence. But never has coverage been found under such 'policies where the insured’s act was deliberately designed to cause harm to the injured party.
Indeed the law is well-settled that there can be no coverage under an insurance policy which insures against an ‘accident’ where ‘the (insured’s) uwongful act complained of is intentionally directed specifically toward the person injured by such act....’ Grange Mutual Casualty Co. v. Thomas, 301 So.2d 158, 159 (Fla.2d D.C.A.1974). ‘Early on it became the overwhelming consensus in those cases that since such a policy was in essence an indemnification contract public policy mandated that an intentional tort was not an ‘accident’ within the coverage for the reason that one ought not to be permitted to indemnify himself against his intentional (torts).’ Leatherby Insurance Co. v. Willoughby, 315 So.2d 553 (Fla.2d D.C.A.1975). Accordingly, an assault and battery committed by the insured has been held to be an intentional tort which is not covered by insurance policies which insure against an ‘accident.’ Consolidated Mutual Insurance Co. v. Ivy Liquors, Inc., 185 So.2d 187 (Fla.3d D.C.A.1966). See also State Farm & Casualty Co. v. Saurazas, 334 So.2d 180 (Fla.4th D.C.A.1976); Capoferri v. Allstate Insurance Co., 322 So.2d 625 (Fla.3d D.C.A.1975); Buchwald v. Hartford Accident and Indemnity Co., 319 So.2d 164 (Fla.3d D.C.A.1975).
In the instant case, the insured Donald Spreen committed an assault and battery upon William King. He reacted to deliberately hit King for a crude and insulting remark about his wife. In no sense, can this assault and battery be considered an ‘accident’ which is covered under the Hartford policy.
The appellees argue that while Spreen intended to hit King he did so on the spur of the moment, did not foresee the extent of King’s injuries, and therefore did not intend them. The argument is unpersuasive. It is a subtle method of introducing the tort rule of treasonable foreseeability into insurance contract cases through the back door. Such a notion has been repeatedly rejected by the Florida courts. Gulf Life Insurance Co. v. Nash, 97 So.2d 4 (Fla.1957); Grange Mutual Casualty Co. v. Thomas, 301 So.2d 158 (Fla.2d D.C.A.1974); Phoenix Ins. Co. v. Helton, 298 So.2d 177 (Fla.1st D.C.A.1974); Cloud v. Shelby Mutual Insurance Co., 248 So.2d 217 (Fla.3d D.C.A.1971); Harvey v. St. Paul Western Insurance Cos., 166 So.2d 822 (Fla.3d D.C.A.1964). The fact that Spreen did not foresee the extent of King’s injuries when he swung at King can no more provide coverage under the Hartford policy than can coverage be denied by the fact that Spreen should have foreseen such injury. Foreseeability is irrelevant to the coverage issue. The sole issue is whether Spreen intended to inflict any harm on King. This he clearly intended to do and the fact that he did not foresee or intend the extent of the harm inflicted does not convert the admitted assault and battery into an accident. Clark v. Allstate Insurance *1099 Co., 22 Ariz.App. 601, 529 P.2d 1195 (1975); Terito v. McAndrew, 246 So.2d 235 (La.App.1971).
We are further supported in our conclusion by the specific exclusion from coverage under the Hartford policy for any damages ‘which are either expected or intended from a standpoint of the insured.’ ‘The courts have generally held that injury or damage is ‘caused ■ intentionally’ within the meaning of an ‘intentional injury exclusion clause’ if the insured has acted with the specific intent to cause harm to a third party....’ Cloud v. Shelby Mutual Insurance Co., 248 So.2d 217, 218 (Fla.3d D.C.A.1971). Spreen clearly acted to cause harm to King which thereby defeats coverage under the intentional injury exclusion clause.

We therefore hold that an injury caused by the insured in an intentional assault and battery is not covered under the Hartford homeowner’s liability policy which provides coverage for damages caused by an ‘accident’ and excludes from coverage damages ‘which are either expected or intended from the standpoint of the insured.’

It is undisputed that McNabb intentionally injured Swartz when he battered him. Whether or not McNabb had Jackson’s permission, was in the scope of such permission, or his conduct arose out of the operation, use, or maintenance of the truck is irrelevant for purposes of insurance coverage. Under Florida law, for policy reasons, there is no coverage when the insured’s acts are intentional. Therefore, McNabb is not an insured under the Canal policy and it cannot be held | irresponsible for Swartz’s injuries.
FEDERAL LAW
Swartz argues that Federal Law, 49 C.F.R. § 387, applies to the interpretation of the Canal insurance policy. Canal claims that, because this issue was not reserved as assignment of error by Swartz, we should not consider it. We disagree on both counts. Initially, Swartz’s assignments of error were broad enough for us to consider all coverage questions and we shall. In that regard, Jackson was required and did obtain the MCS 90 indorsement required by federal law, but the indorsement contains virtually the same language as the Canal policy. The indorsement provided for coverage resulting “from negligence in the operation, maintenance or use of motor vehicles,” “which the insured neither expected or intended.” This language is set forth in 49 C.F.R. § 387.15, which provides the form for the MSC indorsement. Also, the term “accident” is defined in the indorsement and provides that it must be damage that is neither expected nor intended by the insured. Therefore, for Canal to have coverage, the accident must result from both negligence and the operation, maintenance, or use of the motor vehicle where the damage was neither expected nor intended. Accordingly, as we discussed above, Swartz’s damages resulted from acts which were intentional, were expected and intended, and did not result from the use of the vehicle. Accordingly, this assignment of error is without merit.
VICARIOUS LIABILITY
Jackson and Canal urge that it was error for the jury to find that McNabb was Jackson’s “employee” and that he was in the “course and scope of his 19employment” under Louisiana law at the time of the incident. The findings of the jury shall not be set aside unless those findings were manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). In the instant case, we find that the jury did not commit manifest error in holding *1100 McNabb was Jackson’s employer. However, we find that it was unreasonable for the jury to hold that McNabb was in the course and scope of his employment when he battered Swartz. Therefore, the jury was manifestly erroneous in making that finding.[1]
Louisiana law pertaining to an employer’s vicarious liability is well settled and was summarized by the supreme court in Baumeister v. Plunkett, 95-2270, pp. 3-4 (La.5/21/96), 673 So.2d 994, 996-97:
The law in this area is clear that an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment. Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224, 226. The course of employment test refers to time and place. Be-noit v. Capitol Manufacturing Co., 617 So.2d 477, 479 (La.1993). The scope of employment test examines the employment — related risk of injury. Id.
According to Louisiana Civil Code article 2320, “[mjasters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.” In fact, this Court has held that in order for an employer to be vicariously liable for the tortious acts of its employee the “tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer’s business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer’s interest.” Barto v. Franchise Enterprises, Inc., 588 So.2d 1353, 1356 (La.App. 2d Cir.1991), writ denied, 591 So.2d 708 (1992) (quoting LeBrane v. Lewis, 292 So.2d 216, 217, 218 (La.1974)).
“An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours.” Scott v. Commercial Union Ins. Co., 415 So.2d 327, 329 (La.App. 2d Cir.1982) (citing Bradley v. Humble Oil & Refining Co., 163 So.2d 180 (La.App. 4th Cir.1964)). “Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer’s objective.” Id.
More specifically, our LeBrane v. Lewis decision considered the following factors in holding an employer liable for a supervisor’s actions in stabbing his fellow employee:
(1) whether the tortious act was primarily employment rooted;
(2) whether the violence was reasonably incidental to the performance of the employee’s duties;
(3) whether the act occurred on the employer’s premises; and
(4) whether it occurred during the hours of employment.
292 So.2d at 218. This does not mean that all four of these factors must be met before liability may be found. Miller v. Keating, 349 So.2d 265, 268 (La.1977). But as we noted above in Scott, an employer is not vicariously hable merely because his employee commits an intentional tort on the employer’s premises during working hours. 415 So.2d at 329. See also Tampke v. Findley Adhesives, Inc., 489 So.2d 299 (La.App. 4th Cir.), writ denied, 491 So.2d 24 *1101 (1986); McClain v. Holmes, 460 So.2d 681 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1321 (1985). The particular facts of each case must be analyzed to determine whether the employee’s tor-tious conduct was within the course and scope of his employment. Scott, 415 So.2d at 329.
McNabb did not testify at trial. The only evidence as to McNabb’s motives was provided by Swartz himself and Officer James Thibodeaux of the St. Martin Sheriffs office. Swartz testified that he arrived at work at 5:45 a.m. and immediately noticed that the Jackson truck was blocking access and view of the gas pumps; however, he assumed the driver was sleeping and decided not to disturb him unless he still hadn’t moved by 8:00 a.m. when business began picking up. Swartz stated that at 8:00 a.m. the truck was still blocking the pumps. He went out to the truck and noticed that the engines and refrigerator units were both running. He said luthat he went to the driver’s side and, with an open palm, knocked on the door three times. When McNabb came to the window, Swartz testified that he first told McNabb that he appreciated his business, but would he please park in the back area designated for truckers because he was blocking access to the pumps. He stated that McNabb told him, “First, you don’t touch my truck. Second, you scared my daughter,” and then proceeded to punch him in the face. He stated that, after he regained his composure, he went into the store and called the police and then went back outside to get the vehicle’s license plate number at which point McNabb came after him and began punching him. He stated that he ran away and McNabb eventually got in the truck and drove off. He testified that he was never aggressive toward McNabb.
James Thibodeaux of the St. Martin Sheriffs Office testified that he responded to the call regarding the incident at the convenience store. He stated that he issued misdemeanor summons to McNabb for disturbing the peace, simple battery, and simple assault. He further stated that McNabb never denied the statements made by Swartz that he was parked in a no parking zone which was identified as such by a sign. He further testified that McNabb told him that he intentionally struck Swartz because he had scared his seven-year-old daughter when he banged on the truck door.
Swartz urges that McNabb was motivated by a desire to protect the Jackson truck as evidenced by his statement, “First you don’t touch my truck.” We find this argument unpersuasive. McNabb could not have seriously believed that Swartz was a threat to the vehicle. -It is especially telling that the battery occurred after Swartz told McNabb that he appreciated his business and would welcome- him in the back of the convenience store. Clearly, McNabb was angered that Swartz had h2scared and woken up his daughter and was motivated by his own interests rather than that of his employer. His battery of Swartz was not rooted in his employment and was not incidental to his employment duties. In fact, we are convinced that the same result would have occurred if McNabb had been in his own vehicle and not in the process of delivering a haul for Jackson. Thus, his actions have no relation, incidental or otherwise, to his employment duties and were motivated by purely personal considerations. Therefore, Jackson is not vicariously liable for McNabb’s actions.
NEGLIGENT HIRING
Finally, Jackson argues it was error for the jury to allocate 30% of the fault to her while finding no negligence on her part. *1102 We agree. After reviewing the evidence in-this case, we find no error in the jury’s finding that Jackson did not negligently hire, retain, or supervise -McNabb. Having found no fault on the part of Jackson, there is no basis for comparative fault on her part. Therefore, an allocation of 30% of the fault to Jackson is incongruous and we reverse the jury’s assignment of fault to her and attribute 100% of the fault to McNabb.
DAMAGES
Our prior ruling in this case renders this assignment of error moot.
CONCLUSION
Under Florida law, the defendant-appellant, Canal Insurance Company does not provide insurance coverage for this, incident. Defendant-appellant, Della Faye Jackson is not vicariously hable for the actions of Ricky McNabb and no fault 1 ^should have been attributed to her. .Costs of this appeal are assessed against the plaintiff-appellee, Bruce Swartz.
REVERSED AND RENDERED.

. Although disputed, we will assume in this assignment of error that McNabb was Jackson’s employee.