# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# CA 06-425


**HILDA LATIOLAIS**

**VERSUS**

**STATE FARM MUTUAL AUTO INS. CO., ET AL**


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 79082
HONORABLE BYRON HEBERT, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of John D. Saunders, Mark T. Amy, Elizabeth A. Pickett, Billy H. Ezell, and James T. Genovese, Judges.


**Amy, J., dissents finding that the insurance policies provide no independent coverage in this instance.**

**Pickett, J., dissents for the reasons assigned by Judge Amy.**

### AFFIRMED IN PART, REVERSED IN PART, REMANDED.

**Troy Allen Broussard**
**Allen and Gooch**
**P. O. Drawer 3768**
**Lafayette, LA 70584**
**(337) 291-1375**
**Counsel for Defendants/Appellees:**
**The Society of the Roman Catholic Church of the Diocese of Lafayette, Louisiana,**
**Catholic Mutual Relief Society of America and**
**Virginia Surety Company, Inc.**

**Steven J. Bienvenu**
**Dauzat, Falgoust, Cravens, and Bienvenu**
**P. O. Box 1450**
**Opelousas, LA 70570**
**(337) 942-5811**
**Counsel for Defendant/Secondary Appellant:**
**Farm Bureau Mutual Ins. Co.**

**Armand Brinkhaus**
**Olivier and Brinkhaus**
**P. O. Drawer E**
**957 Napoleon Ave.**
**Sunset, LA 70584**
**(337) 662-5242**
**Counsel for Plaintiff/Appellant:**
**Hilda Latiolais**

**Timothy A. Maragos**
**Attorney at Law**
**4023 Ambassador Caffery Pkway.**
**Lafayette, LA 70503**
**(337) 988-7240**
**Counsel for Defendant/Appellees:**
**State Farm Mutual Auto Ins. and James Vellankal**

**SAUNDERS, Judge.**

This litigation arises from a motor vehicle accident wherein a defendant driver caused personal injuries to plaintiff. After the court granted a motion for summary judgment removing defendant driver's employer from the suit based on a finding that the defendant driver was not in the course and scope of his employment, plaintiff added two defendants, one that issued the employer a self-insurance certificate and another that was the insurance company of the employer alleging that the respective certificate of self-insurance and policy afforded coverage to the defendant driver.

The group and insurance company of the defendant employer filed a motion for summary judgment alleging that neither the certificate of self-insurance nor the policy of insurance provided coverage to the defendant driver. The motions were granted thereby removing both litigants from the suit. This ruling was appealed. We affirm in part, reverse and remand in part.

**FACTS AND PROCEDURAL HISTORY**

This lawsuit arises out of an August 2, 2001, motor vehicle accident at the intersection of La. Highway 95 and La. Highway 356 near the Town of Church Point, Parish of Acadia, State of Louisiana. At the time, Father James Vellankal, (hereinafter referred to as "Father Vellankal"), was operating his 1998 Toyota Corolla on La. Highway 356. Hilda Latiolais, (hereinafter referred to as "Ms. Latiolais"),was operating her 1991 Toyota Corolla on La. Highway 95. Father Vellankal allegedly failed to stop or yield the right of way to Ms. Latiolais and caused a collision which resulted in personal injuries to Ms. Latiolais.

Suit was originally filed against the defendant driver of the vehicle, Father Vellankal, defendant driver's personal automobile insurance, State Farm Mutual Automobile Insurance, (hereinafter referred to as "State Farm"), plaintiff's UM

Carrier, Farm Bureau Mutual Insurance Company, (hereinafter referred to as "Farm Bureau"), and defendant driver's employer, The Society of the Roman Catholic Church of the Diocese of Lafayette, Louisiana, (hereinafter referred to as "the Diocese of Lafayette").

The Diocese of Lafayette was granted a motion for summary judgment removing them from the case based on the trial court's finding that Father Vellankal was not acting within the course and scope of his employment at the time of the accident. Plaintiff, Hilda Latiolais, then added Catholic Mutual Relief Society of America (hereinafter referred to as "Catholic Mutual") alleging that they had issued a certificate of self-insurance listing the Diocese of Lafayette as a holder, and that said certificate provided coverage to Father Vellankal for his negligence in the motor vehicle accident. Plaintiff further added Virginia Surety Company, Inc. (hereinafter referred to as "Virginia Surety") alleging that their policy of insurance naming the Diocese of Lafayette as the insured also provided coverage to Father Vellankal for his alleged negligence.

Defendants Catholic Mutual and Virginia Surety filed a Motion for Summary Judgement based on the fact that neither the certificate of self-insurance nor the policy of insurance afforded coverage to Father Vellankal for his actions on the day of the accident. The trial court granted the motions and released both Catholic Mutual and Virginia Surety from the case. Plaintiff, Ms. Latiolais and Defendant/Secondary Appellant, Farm Bureau, appealed the ruling of the trial court.

We affirm in part, reverse in part, and remand.

**ASSIGNMENTS OF ERROR:**

1.  Can this court properly exercise jurisdiction over whether the trial court erred in holding that there was no factual dispute as to the relationship between

2

Father Vellankal with the Diocese at the time of the wreck in light of a November 18, 2005, judgment that released the Diocese of Lafayette from this suit based on a finding that Father Vellankal was not acting within the course and scope of his employment?

2.     Did the trial court err in granting Catholic Mutual and Virginia Surety's motion for summary judgement based on their finding that the policies/certificates of insurance issued to the Diocese of Lafayette do not provide automobile liability insurance coverage to Father James Vellankal for the accident which is the subject matter of this lawsuit?

**ASSIGNMENT OF ERROR #1:**

Plaintiff/Appellant contends that the trial court erred in holding that there was no factual dispute as to the relationship between Father Vellankal with the Diocese at the time of the wreck when confronted with the bare denial of a relationship by Father Vellankal as compared to the testimony of evidence of him being in his ministry of a 24/7 year-round basis in his employment.

Defendant/Appellees filed a motion to strike this assignment of error on behalf of the Diocese of Lafayette, Catholic Mutual and Virginia Surety. They contend that to discuss this assignment of error is to discuss the merits of a final judgement rendered on November 18, 2005, whose time for appeal has lapsed. Said judgement dismissed the Diocese of Lafayette based on the finding that Father Vellankal was not within the course and scope of his employment, and therefore this assignment is not properly before this Court as it is barred by the principles of res judicata.

Res Judicata bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit. LSA-R.S. 13:4231. It promotes judicial efficiency and final resolution of disputes. *Terrebonne Fuel & Lube v. Placid Refining*, 95-0654, 95-0671, (La. 1/16/96); 666 So.2d 624. A final judgment from which there can be no appeal acquires the authority of the thing adjudged. La. C.C. art 3506(31). Once a final judgment acquires the authority of the thing adjudged, no

3

court had jurisdiction to change the judgment, regardless of the magnitude of the final judgment's error. *Tolis v. Board of Supervisors of Louisiana State University*, 95-1529, (La. 10/16/95); 660 So.2d. 1206.

This court grants the Defendant/Appellee's motion to strike Plaintiff/Appellant's Assignment of Error #1 with respect to the former defendant, the Diocese of Lafayette. The final judgement rendered on November 18, 2005, by the trial court has already defined the relationship between Father Vellankal and the Diocese of Lafayette to be one in which Father Vellankal was not acting within the course and scope of his employment when the motor vehicle accident took place. To reopen this question would be to question a final judgment on an issue between the same parties, arising out of the same transaction or occurrence. For this court to exercise jurisdiction as related to the validity of the dismissal of the Diocese of Lafayette over this matter at this time would be improper.

However, this court also finds that the November 18, 2005, judgment dismissing the Diocese of Lafayette does not preclude us from exercising jurisdiction over the question of whether the trial court was proper in granting a motion for summary judgment dismissing Catholic Mutual and Virginia Surety.

The doctrine of res judicata is interpreted stricti juris and any doubt regarding compliance with its requirements is to be resolved in favor of maintaining the action. *Kelty v. Brumfield*, 93-1142 (La. 2/25/94), 633 So.2d 1210; *McNeal v. State Farm Mutual Automobile Ins. Co.*, 278 So.2d. 108 (La.1973). The doctrine of res judicata only applies in cases involving the same parties, or parties who, though different, have the same identity and the same quality. La.R.S. 13: 4231; *Wooley v. State Farm Fire & Casualty Insurance Co.*, 04-882 (La. 1/19/05) 893 So.2d 746.

4

In the November 18, 2005, judgment, the relevant parties were Hilda Latiolais, Father Vellankal and the Diocese of Lafayette. Here the relevant parties are Hilda Latiolais, Father Vellankal, Catholic Mutual and Virginia Surety. Clearly these are different parties. In addition, this court finds that the parties do not have the same identity or the same quality. Defendant/Appellee's motion for summary judgment relates to the coverage of Father Vellankal for his actions as opposed to the liability of the Diocese of Lafayette through its employer/employee relationship with Father Vellankal. Thus this court finds that the application of res judicata would be inappropriate. Further, we find that this court can properly exercise jurisdiction over Assignment of Error #2.

**ASSIGNMENT OF ERROR #2:**

Both Plaintiff/Appellant and Defendant/Secondary Appellant contend that the trial court erred in granting Catholic Mutual and Virginia Surety's motion for summary judgment. The trial court based its ruling on its finding that the certificate of insurance/policy issued to the Diocese of Lafayette by Catholic Mutual and Virginia Surety do not provide automobile liability insurance coverage to Father James Vellankal for the accident at issue.

In order to release Catholic Mutual from the suit, the trial court found that there was no dispute of material fact as to whether Father Vellankal was acting within the scope of his duties or in the official capacity as such nor was he acting on behalf of the Diocese. We do not agree with this determination.

Appellate courts conduct a de novo review of rulings on motions for summary judgment.

> It is well established that a summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on

5

file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. *Palma , Inc., v. Crane Servs. Inc.,* 03-0614, p. 3 (La.App. 3 Cir. 11/5/03), 858 So.2d 772, 774. La.Code Civ.P. art. 966 quoting *Shelton v. Standard/700 Associates*, 01-587, p. 5 (La. 10/16/01), 798 So.2d 60, 64-65.

When the trial court decides a motion for summary judgment, it cannot make credibility determinations, nor may it inquire into the merits of the issues raised. *Hitchcock v. Heritage Manor Nursing Home*, 05-1010 (La.App. 3 Cir. 2/1/06), 922 So.2d 764. If the evidence presented at trial is subject to conflicting interpretations, then summary judgment is not appropriate. *Federated Rural Elec. Ins. Corp. v. Gulf S. Cable*, 02-852 (La.App. 3 Cir. 12/11/02), 833 So.2d 544. The mover must present virtually conclusive evidence which must be met by the non-mover who must show evidence of a dispute. *Bibins v. St. Francis Cabrini Hosp.*, 00-133 (La.App. 3 Cir. 6/7/00), 768 So.2d 102; evidence by the non-mover may be circumstantial evidence of facts and circumstances from which a jury might conclude the existence of other connected facts according to reason and common experience. *Joseph v. Bourssard Rice mill, Inc.*, 200-0628 (La. 10/30/00) 772 So. 2d 94.

The Catholic Mutual certificate provides that it will afford coverage to Father Vellankal while driving his personal vehicle, as an employee of the Diocese of Lafayette, if he were an employee acting "within the scope of their duties" or "in their official capacity as such."

Moreover, Section II (5)(1) provides that Father Vellankal would not be excluded from coverage while driving his own vehicle "on behalf of" the Diocese of Lafayette. Appellants address the exclusionary provision while Appellee does not address this issue, however, it appears that if Father Vellankal does not fit under this exclusion, he is therefore covered as an employee of the Diocese of Lafayette.

Accordingly, Catholic Mutual provides coverage in three (3) different situations: (1) if Father Vellankal is acting "within the scope of their duties" (2) if Father Vellankal is acting "in their official capacity as such" or (3) if Father Vellankal is using his personal vehicle "on behalf of" the Diocese of Lafayette.

Defendant/Appellee vociferously maintains that the phrase "while acting within the scope of their duties or in their official capacity as such" has the exact same meaning as the phrase "while acting within the course and scope of one's employment. We disagree.

Louisiana law pertaining to the course and scope of employment is well settled and was summarized by the supreme court in *Baumeister v. Plunkett*, 95-2270, pp. 3-4 (La. 5/21/96), 673 So.2d 994, 996-97:

> The law in this area is clear that an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment. *Orgeron v. McDonald*, 93-1353 (La.7/5/94), 639 So.2d 224, 226.

> According to Louisiana Civil Code article 2320, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." In fact, this Court has held that in order for an employer to be vicariously liable for the tortious acts of its employee the "tortious conduct of the [employee must be] so closely connected in time, place and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." *Barto v. Franchise Enterprises, Inc.*, 588 So.2d 1353, 1356 (La. App. 2d Cir. 1991), *writ denied*, 591 So.2d 708 (1992) (quoting *LeBrane v. Lewis*, 292 So.2d 216, 217, 218 (La. 1974)).

> "An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours." *Scott v. Commercial Union Ins. Co.*, 415 So.2d 327, 329 (La. App. 2d Cir. 1982) (citing *Bradley v. Humble Oil & refining Co.*, 163 So.2d 180 (La. App. 4th Cir 1964)). "Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective." *Id.*

7

More specifically, our *LeBrane v. Lewis* decision considered the following factors in holding an employer liable for a supervisor's actions in stabbing his fellow employee:

(1) whether the tortious act was primarily employment rooted;

(2) whether the violence was reasonably incidental to the performance of the employee's duties;

(3) whether the act occurred on the employer's premises; and

(4) whether it occurred during the hours of employment.

292 So.2d 218.

This does not mean that all four of these factors must be met before liability may be found. *Miller v. Keating*, 349 So.2d 265, 268 (La. 1977). But as we noted above in *Scott*, an employer is not vicariously liable merely because his employee commits an intentional tort on the employer's premises during working hours. 415 So.2d at 329. *See also Tampke v. Findley Adhesives, Inc.*, 489 So.2d 299 (La. App. 4th Cir.), *writ denied*, 491 So.2d 24 (1986); *McClain v. Holmes*, 460 So.2d 681 (La. App. 1st Cir. 1984), *writ denied*, 463 So.2d 1321 (1985). The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment. *Scott*, 415 So.2d at 329.

While it is clear that the phrase "course and scope of employment" is well defined, it is equally clear that this certificate's language "within the scope of their duties," "in their official capacity as such" and "on behalf of" is not. At no place in the Catholic Mutual Certificate are the phrases "within the scope of their duties," "in their official capacity as such" or "on behalf of" defined.

"An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Because an insurance policy is a contract, the rules established for the construction of written instruments apply to contracts of insurance. The parties' intent, as reflected by the words of an insurance policy, determine the extent of coverage and the intent is to be determined in accordance with the plain, ordinary and popular sense of the language used in the policy, unless the words have acquired a technical meaning. LSA-CC Art. 2047.

> If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written and a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. The determination of whether a contract is clear or ambiguous is a question of law. *Jessop v. City of Alexandria*, 03-1500, p. 3 (La.App. 3 Cir 3/31/04), 871 So.2d 1140, 1143, citing *Miller v. Superior Shipping & Fabrication, Inc.*, 01-2907 (La.App. 1 Cir 8/20/03), 859 So.2d 159.

If an ambiguity exists as to the meaning of a provision of an insurance policy, the ambiguity must be construed against the insurer and in favor of finding coverage. La.Civ.Code art. 2056; *Cadwallader v. Allstate Insurance Co.*, 02-C-1637 (La. 6/27/03), 848 So.2d 577; *Carrier v. Reliance Insurance Co.*, 99-2573 (La. 4/11/00) 759 So.2d 37.

Because the phrases "within the scope of their duties," "within their capacity as such" or "on behalf of" are not defined in the certificate, we look to the plain, ordinary and popular meaning of the language in the certificate.

First, we will look at the use of the word "duties" versus the use of the word "employment." The certificate's language on Page 1 does not refer to the scope of one's employment to provide coverage, instead it states that one must be within the scope of their duties. Popular usage tells us that one's employment encompasses the performance of may job related duties. The use of the word "duties" indicates expansive coverage over actions complementary to any of many job duties rather than coverage of actions that are only employment rooted or essential to an employee's entire employment.

Next, we will look at the use of the term "scope" versus the use of the phrase "course and scope ." The course of employment test refers to time and place. "The scope of employment test examines the employment- related risk of injury." *Benoit v. Capitol Manufacturing Co.*, 617 So.2d 477, 479 (La.1993). Ergo, "course" refers

to time and place in relation to one's employment while "scope" questions whether the activity is encompassed in the ambit of one's employment. Based on the language of the certificate, one does not have to be both within the course and the scope of his employment, rather one must merely be within the scope of his duties. This language use again broadens the coverage of the certificate as one does not have to be at the time and place of his work, i.e. in the course of his work, scheduled to work, being compensated for his work, located on his employer's premises or "at work" in order to be afforded coverage.

The record before us is incomplete and leaves unanswered questions regarding the activities of Father Vellankal. The trial court relied on a affidavit of Father Vellankal wherein he states that he was coming from the house of a personal friend when the accident took place. But, did Father Vellankal bless the house of his friend? Did Father Vellankal discuss any subject related to his duties as a priest with his friend? Did Father Vellankal discuss any Diocese business with his friend? Did they pray together? Why was Father Vellankal dressed in a priest-like manner at the time of the accident? Did Father Vellankal get dressed at his friend's house? Was he on his way to say a Mass?

All that the record shows is that there is conflicting testimony in the form of affidavits. Catholic Mutual relies upon the affidavit of Father Vellankal where he stated that his mission was strictly and exclusively personal, motivated purely by personal concerns. Appellants rely upon the affidavits of Ms. Latiolais, Denise Meche, Dannette Bruce and Linda Boudreaux to state that Father Vellankal was dressed in a priest-like manner and that he was agitated because he was concerned about time. Further, Ms. Latiolais' affidavit states that she had a conversation with

10

Father Vellankal wherein he stated that he was going to say Mass. The affidavits submitted by the parties are at odds regarding the activities of Father Vellankal at the time of the accident. Father Vellankal's activities at the time of the accident are the very crux of this matter and a material of this case.

Because these conflicting affidavits relate to a material issue in this case , they create a genuine issue of material fact as to whether Father Vellankal was acting (1)on behalf of the Diocese or (2) within the scope of his duties or (3) in his official capacities as such at the time of the accident.

This combination of conflicting affidavits, an incomplete record wherein many questions are left unanswered, and the expansive language of the certificate, precludes this court from affirming the trial court's decision to release Catholic Mutual from this suit.

Therefore, we find that the trial court improperly released Catholic Mutual. We find that there exists genuine issues of material fact as to whether the self-insurance certificate issued by Catholic Mutual to the Diocese of Lafayette provided coverage to Father Vellankal. Accordingly, we reverse the judgment of the trial court and remand this case for further fact finding related to this matter.

Next this court will determine if the trial court was proper in dismissing Virginia Surety from this suit. The trial court found that reasonable minds could not differ as to whether the policy of insurance they issued to the Diocese of Lafayette afforded coverage to Father Vellankal for his actions in the accident in question.

Appellant, Hilda Latiolais, argues that the Father Vellankal's vehicle is a listed vehicle under the Virginia Mutual Policy. Appellant makes this contention by pointing out that a list of covered vehicles in the policy includes one car that is the

same model and make of Father Vellankal's vehicle. We find that this argument is lacking in merit.

The Virginia Surety policy lists a partial Vehicle Identification Number (VIN) for each vehicle covered by its policy. The listed partial VIN of the particular vehicle that the Appellant contends is Father Vellankal's is not included in the VIN of the vehicle owned and driven by Father Vellankal. Accordingly, Father Vellankal's personal vehicle that he was driving when this accident occurred is not a listed vehicle and is not covered by the policy.

Defendant/Secondary Appellant, Farm Bureau, argued that Section II A. (1) b. (2) of the Virginia Surety Policy is ambiguous because it does not define the term "employee" and therefore should be read against the drafter, Virginia Surety, and provide coverage to Father Vellankal. Section II A. (1) lists as an insured as:

a)   You (The Named Insured) for any covered auto;

b)   Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:
...
(2)   Your employee if the covered 'auto' is owned by that employee or a member of his or her household....

Appellants raised the issue that under Section II A. (1) b. (2), there is some ambiguity as to what the term "employee" means. They accurately point out that the term "employee" is not defined in the policy. Appellants question whether the meaning of the term "employee" in the exclusionary provision means employee in general, or in the sense that the person must actually be acting as an employee, i.e. in the course and scope of his employment.

We find that whether this exclusionary provision applies to Father Vellankal in this situation is moot. If the exclusion is to apply to Father Vellankal, then he is

12

specifically excluded from coverage. If the exclusion does not apply to Father Vellankal, then Father Vellankal is not excluded from coverage, but this does not mean that he is an insured under the policy. It merely means that Father Vellankal is not excluded as an insured under the policy. For Father Vellankal to be covered by the policy for the accident, he would need to be driving "a covered 'auto' you [the Diocese] own, hire or borrow." There is no evidence in the record to suggest that the Diocese hired or borrowed the personal vehicle of Father Vellankal, and we have already determined that Father Vellankal's personal vehicle, itself, is not covered by the policy. Thus, while Father Vellankal may or may not be excluded by the alleged ambiguous exclusion, it is irrelevant.

Therefore, after reviewing the record and all briefs submitted by the parties, we find that the trail court properly granted the motion for summary judgment filed by Virginia Surety and as such, properly dismissed Virginia Surety from this suit with prejudice. Accordingly, we affirm the judgment of the trial court on this issue.

Finally, Appellees object to the impropriety that Appellants seek to use evidence in the review of this motion for summary judgment that was introduced during the summary judgment hearing that released The Diocese of Lafayette via the November 18, 2005, judgment. They state, in brief, that "the evidence relied upon by Appellants on appeal" was never introduced in the hearing on the summary judgment that released Catholic Mutual and Virginia Surety.

While Appellee's contention may be accurate; it is also accurate that the record before us does contain the evidence relied upon by Appellants. The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. La.Code Civ.P. art. 2164. Therefore, when we look to the record, it does contain the

evidence relied upon by Appellants. We therefore find that the Appellees' objection is without merit.

**CONCLUSION**

The judgment of the trial court is affirmed in part, and reversed remanded in part. Costs of this appeal are assessed equally against the parties.

**AFFIRMED IN PART, REVERSED IN PART, REMANDED.**