STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-948

VINCENT ALEXANDER

VERSUS

AMELIA MANOR NURSING HOME, INC., ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 99-61066
HONORABLE EDWARD LEONARD, JR., DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Glenn B. Gremillion, Judges.

AFFIRMED.

Jarvis J. Claiborne
Post Office Box 1033
Opelousas, LA   70571-1033
(337) 948-4336
COUNSEL FOR PLAINTIFF/APPELLANT:
     Vincent Alexander

Daniel A. Rees
Rees & Rees
123 East Bridge Street
Breaux Bridge, LA   70517-4604
(337) 507-3455
COUNSEL FOR DEFENDANT/APPELLEE:
     St. Agnes Health Care &Rehabilitation Center

**James P. Doherty, III**
**Voorhies & Labbe'**
**Post Office Box 3527**
**Lafayette, LA   70502**
**(337) 232-9700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Amelia Manor Nursing Home, Inc.**

AMY, Judge.

The plaintiffs' mother was, at different times, a resident of the two defendant nursing homes. Following her death, the plaintiffs filed suit, seeking damages related to what they asserted was negligent care. One of the defendants was dismissed after the trial court found both that the cause of action against it was prescribed and that the plaintiffs failed to meet their burden of proof. The remaining nursing home was dismissed after the trial court found that the plaintiffs failed to prove that the defendant breached the applicable standard of care. One of the plaintiffs appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

Eugenia Alexander became a resident of St. Agnes Healthcare and Rehabilitation Center, Inc. (hereinafter St. Agnes) in May 1997. According to Vincent Alexander, one of Ms. Alexander's sons, she was admitted to St. Agnes because she had begun to fall while living in her own home. Vincent testified that St. Agnes was informed of her history of falls and that she was suffering from no sores at the time of her admission. After admission, Ms. Alexander, who had an extensive medical history, developed a number of sores or wounds to her skin. In early June 1998, Ms. Alexander left St. Agnes for treatment at Lafayette General Medical Center, where her left leg was amputated.

After her July 7, 1998 discharge from Lafayette General, Ms. Alexander did not return to St. Agnes. Instead, Ms. Alexander transferred to Amelia Manor Nursing Home (hereinafter Amelia Manor). Two days later, she returned to Lafayette General where she was treated until July 14th. Ms. Alexander returned to Amelia Manor on July 14th, where she resided until July 18th. On that date, the record indicates that Vincent visited his mother and found her having difficulty breathing. Ms. Alexander

was transported by ambulance to Lafayette General. Ms. Alexander died on the same day.

Ms. Alexander's children, Livingston Alexander, John Alexander, Janet Alexander, as well as Vincent, filed the present action on July 13, 1999.[1] Both St. Agnes and Amelia Manor were named as defendants.

With regard to St. Agnes, the plaintiffs claimed that the June 1998 amputation of their mother's left leg was the result of negligent care. Specifically, the plaintiffs questioned whether Ms. Alexander was turned in her bed as often as necessary and, further, whether she received proper attention to the skin wounds that led to the amputation of her left leg. The plaintiffs also generally complained as to the care that Ms. Alexander received at the facility. St. Agnes asserted that the matter against it was prescribed, noting in its memorandum in support of the exception of prescription that Ms. Alexander left St. Agnes on June 3, 1998, and that any alleged negligent conduct giving rise to a cause of action occurred prior to June 4, 1998. However, suit was not filed until July 1999, over thirteen months after Ms. Alexander's departure from the facility. Thus, according to St. Agnes, the matter was prescribed.

St. Agnes also disputed the assertion that Ms. Alexander's skin wounds were the result of improper care. Rather, St. Agnes points to expert testimony indicating that her wounds were not pressure related, but were related to underlying peripheral vascular disease. The trial court granted the exception, dismissing the claim against St. Agnes and additionally concluding that the plaintiffs failed to establish a breach of the standard of care by a preponderance of the evidence.

---

[1] The petition bears a July 13, 1999 date stamp. However, the record's Chronological Index, the trial court's ruling, and St. Agnes's brief indicate that the petition was filed on July 7, 1999. The record lacks explanation for this difference in dates.

The plaintiffs' claim against Amelia Manor focused on their assertion that their mother's breathing was not properly monitored. They contend that had her condition been more closely monitored and more timely action taken, her life may have been prolonged. After considering the merits, the trial court found in favor of Amelia Manor.

Vincent appeals and assigns the following as error:

A.   The trial court erred when it ruled that the claim against St. Agnes had prescribed.

B.   The trial court erred when it ruled that St. Agnes did not fall below standards of care by allowing Eugenia Alexander to fall eleven times, and not properly turning Eugenia Alexander therefore causing left leg amputation.

C.   The trial court erred when it ruled that Amelia Manor was not negligent and contributed to the wrongful death of Eugenia Alexander.

**Discussion**

*Claim as to St. Agnes*

After conducting a full trial on the merits, at which both parties presented evidence, the trial court granted St. Agnes's exception of prescription. Vincent questions the determination and contends that the plaintiffs did not discover the full extent of their possible claim until after September 1998, when their trial counsel received Ms. Alexander's medical records. Vincent asserts that they only "knew about their claim after the death of their mother. They learned more about their claim after the death of their mother, when they received the medical records." Vincent asserts that since suit was filed within one year of this discovery, suit was timely.

Insofar as the plaintiffs advanced a survival claim, La.R.S. 9:5628 provided as follows at the time of the events in question:

A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, . . . whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of such discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

Although La.R.S. 9:5628 was found applicable to nursing homes under the above version, *see Richard v. Louisiana Extended Care Centers*, 02-978 (La. 1/14/03), 835 So.2d 460, the statute was amended in 2001, and now specifically includes nursing homes.[2] With regard to a wrongful death claim, the applicable prescriptive period is provided for by La.Civ.Code art. 3492, which states that "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." *See Taylor v. Giddens*, 618 So.2d 834 (La.1993).

With regard to the merits, a plaintiff pursuing a negligence claim against a nursing home is required to prove, by a preponderance of the evidence, the applicable standard of care, the breach of that standard of care, and the causation of the alleged

---

[2] Pursuant to 2001 La.Acts No. 95, § 1, La.R.S. 9:5628 was further amended to include Section C, which provides:

The provisions of this Section shall apply to all healthcare providers listed herein or defined in R.S. 40:1299.41 regardless of whether the healthcare provider avails itself of the protections and provisions of R.S. 40:1299.21 et seq., by fulfilling the requirements necessary to qualify as listed in R.S. 40:1299.42 and 1299.44.

injury as a result of that breach. *Hinson v. The Glen Oak Ret. Sys.*, 37,550 (La.App. 2 Cir. 8/20/03), 853 So.2d 726, *writ denied*, 03-2835 (La. 12/19/03), 861 So.2d 572.

In reasons for ruling, the trial court first maintained the exception of prescription. It addressed the merits as well, finding that the plaintiffs failed to sustain their burden of proof. The trial court explained:

> The evidence shows that Mr. Vincent Alexander and Mrs. Janet Alexander visited their mother one or more times a day and kept [] themselves apprised of her physical condition. They were at all times aware of her medical condition and had sufficient facts to put them on notice of the problem with the bedsores well before the amputation of her leg. As such, the Court is compelled to find that the case against St. Agnes is prescribed.

> The Court has nevertheless reviewed the facts on the merits of the case against St. Agnes. The plaintiffs were not satisfied with the care which their mother received at St. Agnes. Complaints included issues of cleanliness, falls, feeding, and turning to avoid bed sores. The chief complaint, and the one which prompted this lawsuit, is that their mother was not turned as required and as a result developed bed sores or pressure wounds which ultimately led to having her left leg amputated.

> This Court is convinced of the sincerity and truthfulness of the testimony of the plaintiffs. They were very dedicated to their mother, returning to her in her later years the love and attention which she had always given them and which resulted in their becoming the kind of citizens they are.

> However, the weight of the medical evidence does not support their position. The weight of the evidence shows that Mrs. Eugenia Alexander was ambulatory when she entered St. Agnes, but was not able to care for her own needs. She was diagnosed with renal failure, hypertension and peripheral vascular disease. She was ambulatory and could turn herself, however. Despite this, she developed skin wounds on her legs and sacral area. The sacral wound was resolved while in St. Agnes, but the leg wound(s) got progressively worse. In April, 1998, Dr. Holden diagnosed blood circulation blockage. By early June, the leg condition had worsened, resulting in her hospitalization and later amputation of the left leg. The medical evidence proves to the Court by a preponderance of the evidence that the wounds and subsequent amputation were due to the vascular disease and not to the care received from or the negligence of St. Agnes. Wound care nurses tended to Mrs. Alexander on a regular basis as ordered by the physicians who treated Mrs. Alexander. Plaintiff's experts did not have any issue with the

5

wound care provided by St. Agnes staff. Further, there is no testimony that they did not comply with the physicians orders in reference in turning and/or that Mrs. Alexander was unable to turn herself. The Court finds that the Plaintiffs failed to carry their burden of proving that the nursing home failed to meet the standard of care applicable to it and therefore, this Court must render judgment in favor of the [sic] St. Agnes.

With regard to prescription, a trial court's findings of facts related to evidence introduced at the hearing on the exception are subject to the manifest error standard of review. *Carter v. Haygood*, 04-0646 (La. 1/19/05), 892 So.2d 1261, *citing Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993). Having reviewed the evidence presented, we find no manifest error in the trial court's ruling on prescription nor in its factual findings regarding the burden of proof.

Again, Ms. Alexander left St. Agnes in early June 1998. She died on July 18, 1998. Suit was filed in this matter on July 13, 1999. Insofar as survival claims are concerned, this matter was prescribed at the time the petition was filed. Alleged acts or omissions constituting negligence by St. Agnes's personnel would not have occurred after Ms. Alexander left the facility. Furthermore, as recognized by the trial court, there is no merit to the plaintiffs' assertion that they were not aware of any allegedly negligent conduct which they either knew about or which they should have known about. Rather, the evidence presented at the hearing revealed ongoing and general dissatisfaction with the facility. Vincent testified as to his dissatisfaction with his mother's falls while at the facility. While he also testified as to his dissatisfaction with the cleanliness of her room, the alleged lack of attention to her laundry, and the inadequacy of her diet, the central complaint focused upon her skin wounds and her repeated falls. He explained that he visited his mother daily and repeatedly reported his complaints to nursing home personnel. Furthermore, the plaintiffs were aware of

6

their mother's skin wounds. In fact, Ms. Alexander's left leg was amputated shortly after she was taken from St. Agnes. Certainly by this point, at the latest, the plaintiffs knew or should have known of any potential claim against St. Agnes.

Further, the trial court's observation that the plaintiffs failed to sustain their burden of proof as to a breach of standard of care is correct insofar as the merits of the case are concerned. This is also true insofar as Vincent contends that the plaintiffs alleged a wrongful death against St. Agnes. The evidence presented by the plaintiffs was not sufficient so as to require the trial court to conclude that St. Agnes's actions deviated from the standard of care or, furthermore, was responsible either for the loss of Ms. Alexander's leg or her ultimate death. Although the plaintiff presented a nursing expert, the trial court was not required to accept her testimony, either as to falls or to skin wounds. Furthermore, evidence was presented which indicated that Ms. Alexander's skin wounds were related to an underlying condition and were not due to pressure. Testimony also indicated that St. Agnes did not deviate from the standard of care with regard to the use of restraints in this case. The trial court was free to accept this evidence.

This assignment lacks merit.

*Claim as to Amelia Manor*

Vincent also questions the trial court's determination that the plaintiffs failed to prove negligence against Amelia Manor. Rather than formulating a specific argument in his appellate brief, Vincent references the testimony of various witnesses and cursorily states in the close of his brief that: "Amelia Manor continued in the sad saga of negligence by allowing [Ms.] Alexander to suffer without her oxygen supply for at least an hour. This ultimately caused her death."

7

In ruling on the merits of this case, the trial court explained:

> [Ms.] Alexander was admitted to Amelia Manor on July 7, 1998, after being released from Lafayette General and following the amputation. Two days later, she was transferred back to Lafayette General where she remained until July 14, 1998, when she returned to Amelia Manor. She was extremely ill.
>
> Her son Vincent and daughter Janet continued to visit her on a regular basis.
>
> Oxygen was prescribed for her while in Amelia Manor, as well as breathing treatments. She was provided various medical therapies as prescribed by her treating physician.
>
> The principal cause of this suit deals with the events of July 18, 1998, when Mr. Vincent Alexander visited his mother and found her to be gasping for breath. He immediately requested the doctor, who did not come. He and an attending nurse both testified that they called Acadian Ambulance, which arrived, rendered aid, and took her to Lafayette General where she died later that day. Hospital records show that she had been administered a breathing treatment a short time before Mr. Alexander had arrived.
>
> This Court can certainly understand and appreciate the feelings of the plaintiffs that their mother did not receive proper care by Amelia Manor on the date of her passing.
>
> However, there is no evidence to prove that Amelia Manor did anything to hasten Mrs. Alexander's death, or that the standard of care to which it is legally held was breached. The Court must therefore find that the plaintiffs have not proved their case against Amelia Manor by a preponderance of the evidence.

Again, the trial court's findings are supported by the record. Vincent recounted the events of the day of his mother's death. We note that even if the trial court had accepted Vincent's assertion that he was told by an unidentified witness that Ms. Alexander had been experiencing difficulty breathing for up to an hour before he arrived on the day of her death, the plaintiffs failed to establish that there was a breach of the standard of care or that this breach caused Ms. Alexander's death. No expert testified that the procedure employed by the staff for monitoring or attending

8

to Ms. Alexander was inadequate. Rather, according to an LPN on duty on the morning of Ms. Alexander's death, respiratory therapy notes indicate that a breathing treatment was administered prior to her distress. Furthermore, the plaintiffs' evidence is lacking with regard to causation and cause-in-fact. There is no evidence that had Amelia Manor personnel responded more quickly to Ms. Alexander's condition her life would have been extended. We note that once taken to Lafayette General, resuscitation was ceased due to an Advance Directive brought to the attention of hospital personnel by Ms. Alexander's daughter. Given the plaintiffs' lack of evidence supporting the critical elements necessary to establish their case, the trial court's determination is supported by the record.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the judgment of the trial court dismissing the claims against the defendants, Amelia Manor Nursing Home, Inc. and St. Agnes Healthcare and Rehabilitation Center, Inc. is affirmed. All costs of this appeal are assigned to the plaintiff-appellant, Vincent Alexander.

**AFFIRMED.**