# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-122

JEFF SEPULVADO

VERSUS

TOLEDO NURSING CENTER, INC. AND
MANAGEMENT SERVICES OF BEAUREGARD PARISH, INC.

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT,
PARISH OF SABINE,  NO. 58,852
HONORABLE ROBERT E. BURGESS,
DISTRICT JUDGE

**********

## J. DAVID PAINTER
## JUDGE

**********

Court composed of Michael G. Sullivan, Billy H. Ezell, and J. David Painter, Judges.

**REVERSED AND REMANDED.**

George A. Flournoy
Flournoy & Doggett
P.O. Box 1270
Alexandria, LA 71309
Counsel for Plaintiff-Appellant:
    Jeff Sepulvado

David R. Sobel
Provosty, Sadler, Delauney, Fiorenza & Sobel
P.O. Drawer 1791
Alexandria, LA 71309
Counsel for Defendant-Appellee
    Toledo Nursing Center and Management
    Services of Beauregard Parish, Inc.

PAINTER, Judge.

Plaintiff, Jeff Sepulvado, appeals the trial court's grant of summary judgment dismissing the claim for nursing home negligence in connection with injuries sustained by his elderly mother while a patient at Toledo Nursing Center, Inc. (TNC). Finding that issues of fact remain as to breach of the standard of care as well as to causation, we reverse the judgment of the trial court and remand for further proceedings.

FACTS

The underlying facts, as outlined in the opinion of the medical review panel, are undisputed, and we base the following fact summary on that document. Plaintiff's mother, Edith Sepulvado, was admitted to TNC on May 1, 2001. At that time she was eighty-one years old and suffering from advanced Alzheimer's disease, psychosis, anemia, malnutrition, increased agitation, repetitive babbling, and gastrostomy. She was at high risk for falls a variety of restraints were used during her time at TNC. She was given an "Alzheimer's bed," which was low to the floor to minimize the impact of falls, and mats were placed around her bed for the same reason. The patient was largely non-verbal and frequently engaged in rocking behavior and babbling.

In mid-January 2003, Mrs. Sepulvado suffered head bruising and a skin tear. In February, she had bruises to her forehead. The origin of these injuries were unknown. On February 11, 2003, she was found on the mat beside her bed, rocking and babbling. She was rubbing the right side of her face on the bed. Later the same day, she was rubbing her right eye, and she was found to have bruising above the right eye and on her forehead. Her treating physician, Dr. Greg Founds, was notified.

1

On February 13, 2003, Mrs. Sepulvado was found on the floor between the foot of her bed and the mat. There were skin tears over her right eye and right cheek. She was put back in bed, and her wounds were tended. She was sent to Sabine Medical Center for treatment and returned to TNC the same day. As a result of this incident, Dr. Founds ordered a CT scan, which was performed at Sabine Medical Center. The results of the CT scan showed a right frontal contusion with possible shearing but without symptoms of increased intracranial pressure or mass effect.

TNC installed an alarm on Mrs. Sepulvado's bed. Another CT scan of Mrs. Sepulvado's head was performed in late February 2003. The results showed a "right frontal contusion and right temporal lobe low density. Most likely shear injury. New left subdural extra-axial fluid collection - looks like chronic subdural hematoma." In March 2003, Mrs. Sepulvado was examined by Dr. Anil Nanda, a neurosurgeon. He noted a small subdural hematoma and found her to be neurologically unchanged.

On March 11, 2003, Dr. Nanda ordered a repeat CT scan of Mrs. Sepulvado's head to be performed on April 8, 2003. On March 12, 2003, before the scan could be performed, Mrs. Sepulvado was taken to the emergency room at Sabine Medical Center because of recurrent fever spikes over the previous few days. She was admitted to the hospital with right lower lobe pneumonia, dehydration, and diarrhea. She did not return to TNC thereafter.

PROCEDURAL HISTORY

In January 2004, Edith Sepulvado and her son, Jeff Sepulvado filed a medical review panel complaint in which they named as defendants TNC, Management Services of Beauregard Parish (MSBP), and several employees of TNC. The opinion issued by the panel indicates that the two physician members of the panel found no

2

breach of the standard of care, but that the nurse member of the panel, who is also a

Ph.D., felt that a breach of the standard of care had occurred. The opinion states, in

pertinent part:

> The claimants herein have made generalized allegations of failure by the defendants to properly monitor, supervise, and care for the patient. These doctors find that the records herein are devoid of any such failures on the part of the defendants. The assessments of the patient properly identified her condition and risks, and steps were taken, including restraints and special equipment, to reduce the risk of falls and injury to the patient. The claimants have provided nothing which contradicts the records' documentation of proper and timely care by the defendants. Given the patient's history and condition, it is not unexpected that she would suffer occasional injuries from falls or bumps. Short of total restraints, utilized one-hundred percent (100%) of the time, there is no method by which a patient such as Ms. Sepulvado herein can be completely protected from injury. While the record does document a failure to accomplish communication about a fall with family members in certain instances, it does not rise to the level of a breach.

> After a careful review of all evidence submitted for my review, and for the reasons espoused below, Dr. Tucker finds that the actions of the defendants herein, Toledo Nursing Center, Inc., Management Services of Beauregard Parish, Ms. Cheryl Rivers, LPN, Ms. Viola Malmay, LPN, Ms. Sue Pilkington, RN, and Ms. Pam Kennedy, did constitute a deviation from the applicable standard of care.

> The facility herein, and its employees, were not equipped to handle a geripsych individual such as the patient herein. The staff was not adequately trained; accordingly, did not make the proper assessments or take appropriate actions, particularly with respect to the monitoring of the patient. Due to the patient's repeated falls, she should have been monitored more closely and more frequently. There was no monitoring for seizures, despite a history of seizures, and the LPNs were apparently not aware of the effects of medication, as there were no genuine attempts to communicate with the patient due to the described "babbling[.]" Dr. Tucker finds the overall care to have been substandard in numerous respects.

On March 30, 2006, after the death of Mrs. Sepulvado[1], her son filed this

action seeking compensation for pre-death physical and mental pain and suffering and

---

[1]The cause of Mrs. Sepulvado's death does not appear of record and does not constitute part of Plaintiff's claim.

3

for medical expenses. He further sought damages under *Lejeune v. Rayne Branch Hospital*, 556 So.2d 559 (La.1990).

Defendants answered the petition, and, on August 25, 2006, filed a motion for summary judgment. In that motion they asserted that Plaintiff's petition should be dismissed since there was no remaining issue as to material fact because, even admitting, for purposes of the motion only, that there was a deviation from the standard of care, Plaintiff could not show a causal connection between the breach of the standard of care and the injury to Mrs. Sepulvado. Attached in support of the motion was the affidavit of Dr. Scott Gremillion, who served on the medical review panel. He stated that:

> The Medical Review Panel found unanimously, with written reasons, that the evidence did not support the conclusion that Toledo Nursing Center, Inc. deviated from the applicable standard of care as charged in the complaint of malpractice and that no conduct by Toledo Nursing Center, Inc. was causative of any harm to the patient herein.

Plaintiff opposed the motion, and submitted the affidavit of Dr. Sandra Tucker, a registered nurse and holder of a Ph.D. in Clinical Nursing Research, in which she stated that it was her opinion that the nursing home did deviate from the standard of care and that the breach contributed to the injuries sustained by Mrs. Sepulvado.

The trial court granted Defendants' motion for summary judgment and dismissed Plaintiff's claims. Plaintiff appeals. Finding that material issues of fact remain, we reverse the judgment and remand for further proceedings.

DISCUSSION

*Summary Judgment*

> Appellate courts review summary judgments *de novo* and use the same criteria as the trial court in determining whether summary judgment is appropriate. *Nguyen v. Underwriters at Lloyd's*, 05-1407 (La.App. 3 Cir. 5/3/06), 929 So.2d 821, *writ denied*, 06-1332

(La.9/22/06), 937 So.2d 387. Pursuant to La.Code Civ.P. art. 966(B), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law."

> Louisiana Code of Civil Procedure Article 966 charges the moving party with the burden of proving that summary judgment is appropriate. However, when the movant will not bear the burden of proof at trial on the matter that is before the court, the movant's burden on the motion does not require him to negate all of the essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more of the elements essential to the adverse party's claim. *See* La.Code Civ.P. art. 966(C)(2). If the adverse party fails to produce factual support to convince the court that he can carry his burden of proof at trial, there is no genuine issue of material fact and granting of the motion is mandated. *Hardy v. Bowie*, 98-2821 (La.9/8/99), 744 So.2d 606; *Hayes v. Autin*, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, *writ denied*, 97-281 (La.3/14/97), 690 So.2d 41.

*Nguyen* at 823.

*Louisiana Pigment Co., L.P. v. Scott Constr. Co., Inc.*, 06-1026, p. 5 (La.App. 3 Cir. 12/20/06), 945 So.2d 980, 983.

Because they would not have had the burden of proof at trial, in order to show that summary judgment was appropriate, movers herein had to show that there was no support for one or more of the elements of Plaintiff's claim.

> [A] plaintiff pursuing a negligence claim against a nursing home is required to prove, by a preponderance of the evidence, the applicable standard of care, the breach of that standard of care, and the causation of the alleged injury as a result of that breach. *Hinson v. The Glen Oak Ret. Sys.*, 37,550 (La.App. 2 Cir. 8/20/03), 853 So.2d 726, *writ denied*, 03-2835 (La.12/19/03), 861 So.2d 572.

*Alexander v. Amelia Manor Nursing Home, Inc.*, 05-948, pp. 4-5 (La.App. 3 Cir. 3/1/06), 924 So.2d 409, 412-13.

In this case, Defendants have, for purposes of the motion for summary judgment only, conceded that the standard of care was breached. The motion for

5

summary judgment was based on an alleged lack of evidence showing a causal connection between the breach and the injuries sustained by Mrs. Sepulvado. Plaintiff responded by filing, with his opposition, the affidavit of Dr. Tucker, R.N., in which she stated that:

> Based on her experience, expertise and training and after review of the above described medical record sand affidavit, it is affiant's opinion that the defendant nursing home did deviate from the applicable standards of care in its treatment and management of the care of Edith Sepulvado.
>
> . . . .
>
> Based on her experience, expertise and training and after review of the above described medical records and affidavit, defendant's deviation from the standards of care played a part and/or caused the physical injuries to Edith Sepulvado described in the affidavit of Jeff Sepulvado.

Defendants argued, that because Dr. Tucker is a nurse and not a medical doctor, she is not qualified to give an "opinion as to the medical causation or harm, as such would be tantamount to making a diagnosis, which is the province of physicians." However, we find that it was not necessary for Dr. Tucker to diagnose Mrs. Sepulvado's condition in order to give an opinion as to whether a breach of the standard of care caused the injuries. It is undisputed that at least some of Mrs. Sepulvado's injuries were caused by falling. Dr. Tucker is qualified, as a registered nurse and holder of a Ph.D in Clinical Nursing Research, to give an opinion as to whether there was a causal connection between the falls and the breach of the standard of care by the nursing home. This does not entail a medical diagnosis.

"When the trial court decides a motion for summary judgment, it cannot make credibility determinations, nor may it inquire into the merits of the issues raised. *Hitchcock v. Heritage Manor Nursing Home*, 05-1010 (La.App. 3 Cir. 2/1/06), 922 So.2d 764." *Latiolais v. State Farm Mut. Auto Ins. Co.*, 06-425, p. 6 (La.App. 3 Cir.

6

11/22/06), 949 So.2d 455, 459. Given the direct conflict between the affidavits of Dr. Gremillion and Dr. Tucker, there remains a question of fact as to whether Mrs. Sepulvado's injuries were caused by a breach of the standard of care by TNC. As a result, summary judgment is not appropriate.

*Motion to Strike*

Additionally, Defendants move to strike photographs of Mrs. Sepulvado which were included in the brief. However, having found that a question of fact remains without having considered the photographs, we pretermit consideration of the argument.

CONCLUSION

The judgment of the trial court dismissing Plaintiff's claim pursuant to Defendants' motion for summary judgment is reversed. Defendants' motion to strike is denied. The matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed to Defendants.

REVERSED AND REMANDED.